UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 3:19-cr-196-HES-JRK

DEANNAJO WHITE  ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)

---

**ORDER**

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Deannajo White is a 40-year-old inmate incarcerated at FMC Carswell, serving a 24-month term of imprisonment for disaster assistance fraud after she submitted fraudulent claims to FEMA[1] following Hurricane Irma. (Doc. 44, Judgment). According to the Bureau of Prisons (BOP), she is scheduled to be released from prison on June 21, 2022. Defendant seeks

---

[1] Federal Emergency Management Agency.

compassionate release because of the Covid-19 pandemic and because she has Pulmonary Langerhans' Cell Histiocytosis (PLCH), which Defendant describes as cancerous. (Doc. 46, Motion for Compassionate Release). Defendant states that she requires a bilateral lung transplant; that she has seen a pulmonologist only once since entering prison (who allegedly lacked experience treating her condition); that she has had only one chest x-ray (the results of which she did not receive); and that a respiratory therapist recommended that she receive oxygen at night, which she has not received.[2] The United States opposes the Motion and submits Defendant's BOP medical records under seal. (Doc. 48, Response).

A movant under § 3582(c)(1)(A) bears the burden of proving that a sentence reduction is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021) (citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[2] In the reduction-in-sentence request she submitted to the warden of her facility, Defendant also stated that she suffers from chronic obstructive pulmonary disorder (COPD), emphysema, and pulmonary hypertension. (Doc. 46-1 at 5). She does not specifically raise these conditions in her Motion for Compassionate Release.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit Court of Appeals instructs that the relevant policy statement, U.S.S.G. § 1B1.13, including its definition of "extraordinary and compelling reasons," governs all motions filed under 18 U.S.C. § 3582(c)(1)(A), including those filed after the First Step Act. United States v. Bryant, 996 F.3d 1243, 1247–48 (11th Cir. 2021). "Because the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). As the Third Circuit Court of Appeals has observed, Covid-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant has not demonstrated extraordinary and compelling reasons warranting compassionate release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 & cmt. 1. Notably, Defendant's diagnosis of PLCH is not a new development. Defendant has suffered from the disease since at least 2003 or 2004 (Doc. 34, Presentence Investigation Report at ¶¶ 59–64); (Gov't Medical Records at pp. 116–17 (filed under seal)), well before she committed the instant offense. According to the National Cancer Institute, "Langerhans cell histiocytosis is a rare disorder that can damage tissue or cause lesions to form in one or more

places in the body," including in the lungs.[3] However, "[i]t is not known whether LCH is a form of cancer or a cancer-like disease."[4] According to Defendant, the disease "can resolve itself but can also become life threatening." (Doc. 36, Defendant's Sentencing Memorandum at 5).

The Court was aware of Defendant's medical condition, as well as the Covid-19 pandemic, when it sentenced her in October 2020. Both topics were discussed in detail during the sentencing proceedings. (See PSR at ¶¶ 59–64; see also Doc. 36 at 5–8; Doc. 36-3, Defendant's Sentencing Exhibit on Langerhans Cell Histiocytosis). Defendant advised the Court in her sentencing memorandum that she underwent chemotherapy for PLCH in 2017 and that "a lung transplant may prove necessary in the future." (Doc. 36 at 5). She also advised the Court that the Social Security Administration had approved her application for disability payments in 2014 based on her conditions of emphysema and chronic pulmonary heart disease. (Id. at 5–6). Defendant argued that her medical conditions exposed her to a heightened risk of severe illness or death from Covid-19. (Id. at 7–9). Thus, the Court considered the bases for Defendant's current request for compassionate release – PLCH and Covid-19 – when it fashioned her sentence in October 2020. Importantly, there is no indication that Defendant's condition has substantially changed or

---

[3]   https://www.cancer.gov/types/langerhans/patient/langerhans-treatment-pdq.

[4]   Id.

worsened since the Court sentenced her less than a year ago. Although Defendant may require a lung transplant at some point in the future, there is no indication that Defendant is currently at imminent risk of death or grave danger without a transplant. As one appeals court recently observed, "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling.'" United States v. Hunter, No. 21-1275, 2021 WL 3855665, at *9 (6th Cir. Aug. 30, 2021) (published). Thus, "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." Id. at *4.

Moreover, under the applicable policy statement, by which this Court is bound, Bryant, 996 F.3d at 1248, a "serious medical condition" qualifies as an extraordinary and compelling reason for a sentence reduction only if the defendant is suffering from (i) a terminal illness or (ii) a serious medical, physical, or mental condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. 1(A). The medical records before the Court contain no indication that Defendant's PLCH is a terminal disease. And although the medical records indicate that Defendant's PLCH causes exertional dyspnea (shortness of breath during physical exertion) and impacts her nocturnal oxygen saturation

levels, there is no indication that the disease "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." Id. Further, the medical records reflect that the staff at FMC Carswell are monitoring and treating Defendant's condition. Among other medications, Defendant is prescribed an albuterol inhaler and a tiotropium bromide inhaler to help with breathing. (Gov't Medical Records, pp. 90–91). She has received the pneumonia vaccine, the flu vaccine, and the Covid-19 vaccine. (Id., pp. 8, 110; see also Immunization Record (filed under seal)). Defendant complains that she has not received nighttime oxygen, as recommended by a respiratory therapist, but the records reflect that nocturnal supplemental oxygen would be necessary only if her blood saturation level was less than 88% (Gov't Medical Records, pp. 7, 113), which was not the case. A recent treatment note reflects that Defendant underwent a "noxturnal [sic] oximetry study ... which reveal[ed] basal SpO2 = 91.2%" on room air ("RA"), and that no supplemental oxygen would be issued without a physician's order. (Id., p. 3).[5] Defendant also complains that she has seen a pulmonologist only once and received one chest x-ray. Defendant had a consultation with a pulmonologist, Dayaker Gagadam, M.D., on June 11, 2021, who reported the

---

[5] A previous study conducted in April 2021 reflected that Defendant had a blood oxygen saturation level of 91.5%, also above the 88% threshold. (Id., p. 18). Both measurements reflect a modest improvement compared to 2018, when Defendant reported to her doctor that her blood oxygen level desaturated to 85% to 86% at night. (Id., p. 129).

6

following results of a chest x-ray taken on March 31, 2021:

> Recent CXR 3/31/21 showed no acute findings, no focal infiltrates. Mild diffuse interstitial fibrotic changes with micro-nodularity in the peri-bronchial distribution, and mid and lower lung fields. Minimal scarring bilateral upper lung fields. These findings can be related to pulmonary Langerhans cell histiocytosis history that is provided. No cystic changes in the lung or bronchicetatic changes. No pneumothorax. Lung inflation is normal.

(Id., p. 112). The records reflect that Defendant is scheduled for a follow-up appointment on October 11, 2021. (See id., pp. 8, 113). Overall, the medical records reflect that Defendant's PLCH is stable and well monitored.

Insofar as PLCH and Covid-19 are concerned, the Centers for Disease Control (CDC) report that chronic lung diseases can increase the risk of severe illness or death from Covid-19.[6] However, Defendant (wisely) accepted both doses of the Pfizer-BioNTech Covid-19 vaccine on July 21, 2021, and August 11, 2021. (Immunization Record (filed under seal)). The Covid-19 vaccines are effective at reducing the risk of death or hospitalization from coronavirus, even accounting for new variants. Under the circumstances, Defendant's situation is not so extraordinary and compelling as to warrant a sentence reduction.[7]

Finally, and in any event, the sentencing factors under § 3553(a) do not support a reduction in sentence. 18 U.S.C. § 3582(c)(1)(A). Defendant

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[7] According to the BOP's latest data, seven inmates (out of 1,406) and one staff member are currently positive for Covid-19 at FMC Carswell. https://www.bop.gov/coronavirus/. Last accessed September 8, 2021. About 91% of the inmates are fully vaccinated. See id.

submitted more than $15,000 in fraudulent claims to FEMA in the wake of Hurricane Irma, and continued to lie to federal agents after they began investigating her claims. See PSR at ¶¶ 4–8. Between 2004 and 2018, Defendant was convicted of more than a dozen felonies, many involving crimes of fraud or dishonesty. See id. at ¶¶ 25–39. Her sentencing guidelines range was 27 to 33 months in prison, based on a total offense level of 11 and a Criminal History Category of VI. Id. at ¶ 83. The Court varied below that range when it imposed a term of 24 months in prison. Further reducing Defendant's sentence is not warranted in view of all the § 3553(a) factors. Her lengthy criminal history suggests it is necessary to impose a sentence that will promote respect for the law and afford adequate deterrence. Reducing Defendant's sentence would fail to accomplish these goals. It is also unclear that Defendant would have better access to medical care if released from FMC Carswell, where she has access to round-the-clock care. See 18 U.S.C. § 3553(a)(2)(D).

Accordingly, Defendant's Motion for Compassionate Release (Doc. 46) is **DENIED**. The United States' request to file medical records under seal (Doc. 48 at 11 n.4) is **GRANTED**.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of September, 2021.

HARVEY E. SCHLESINGER
United States District Judge

8

lc 19

Copies:
Counsel of record
Defendant